**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**DEREK GUYSINGER,**

  **Petitioner,**

  **v.**

**WARDEN, NOBLE**
**CORRECTIONAL INSTITUTION,**

  **Respondent.**

       **CASE NO. 2:19-CV-774**
       **Judge Edmund A. Sargus, Jr.**
       **Magistrate Judge Kimberly A. Jolson**

## ORDER and REPORT AND RECOMMENDATION

Petitioner, a state prisoner, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition (Doc. 1), Respondent's Return of Writ (Doc. 5), Petitioner's Reply (Doc. 8), and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that the Petition be **DENIED** and that this action be **DISMISSED**.

Petitioner's motion for discovery (Doc. 12) is **DENIED**.

### I. Facts and Procedural History

The Court of Appeals for Ohio's Fourth District summarized the relevant facts and procedural history of this case as follows:

> On January 23, 2015, the Ross County Grand Jury returned an indictment that charged [Petitioner] with (1) three counts of rape of a child less than 13 years old, and (2) five counts of gross sexual imposition of a child less than 13 years old. [Petitioner] pled not guilty to the charges.
>
> . . . Subsequently, [Petitioner] filed a detailed motion to suppress the expected testimony of the prosecution's witness, Laura Butt, an employee of the Ross County Child Protection Center, in its case-in-chief. Although the state had requested a subpoena for Butt to testify at trial, after the filing of the motion to suppress, the state withdrew her name as a witness.

. . . Additionally, the trial court granted [Petitioner]'s request for a continuance based upon the representation that the defense needed additional time to obtain an investigator to interview potential witnesses and to determine if the witnesses were material to the defense. [Petitioner] also requested and received a bill of particulars of the charged offenses.

. . . At the jury trial, the state presented two witnesses—the alleged victim of the crimes (A.G., Guysinger's biological daughter) and Dr. Satish Jetty, a pediatrician who examined A.G. A.G., who was 13 years old at the time of the trial, testified that after her parents separated, she lived with her father, the [Petitioner]. In the summer of 2012, when A.G. was 10 years old and before she began the fifth grade, A.G. moved to a residence on Egypt Pike where [Petitioner] shared a bedroom with his girlfriend, Tina. A.G. shared a bedroom with one of Tina's daughters, and Tina's other daughter had her own bedroom. The remaining rooms in the residence were the bathroom, living room, kitchen, and laundry room.

. . . A.G. testified that on one afternoon in 2012 after she came home from school, she stayed at a friend's house until [Petitioner] told her to come home. When she arrived home, [Petitioner] told her to sit on his lap in the living room. No one else was at home. After A.G. sat on [Petitioner]'s lap, he inserted his hand inside her underwear and rubbed her vagina for five or six minutes. [Petitioner] stopped because his girlfriend, Tina, was coming home from work. [Petitioner] then told A.G. to shower.

. . . That same night, in her bedroom while the other girl was asleep, [Petitioner] removed A.G.'s underwear and touched her vagina. A.G. then started to move until [Petitioner] left the room.

. . . The next afternoon, after A.G. came home, [Petitioner] went into A.G.'s room, removed her pants and inserted his penis into her vagina for about five minutes, hurting her. [Petitioner] stopped when A.G.'s friend and his brother came to ask A.G. to come outside and play. [Petitioner] again told A.G. to shower.

. . . A couple of days later, while [Petitioner] was driving A.G. to a friend's house near the flood wall, [Petitioner] again rubbed A.G.'s vagina through the outside of her sweatpants for two or three minutes, then warned her not to tell anyone or he'd get in trouble. When they arrived at the friend's home, [Petitioner] went inside while A.G. stayed in the car and wrapped herself in a blanket. On the return trip to their house, [Petitioner] removed A.G.'s blanket, inserted his hand inside her underwear and rubbed her vagina.

. . . A few days later, while A.G., Tina, and Tina's two children watched the television program "Glee," A.G. walked to the kitchen during a commercial break. At that time, Tina remained in the living room, one daughter in the bathroom, and her other daughter in her bedroom. [Petitioner] went to the kitchen, pulled down

A.G.'s pants and underwear, then touched her buttocks with his penis for a couple seconds before he stopped and pulled up their pants.

. . . During another evening, while A.G. washed dinner dishes and one of Tina's daughters was in her room and Tina and her other daughter were not at home, [Petitioner] stood behind A.G., pulled down her pants and inserted his penis inside her vagina for one to two minutes. Once again, [Petitioner] then told A.G. to shower.

. . . A few weeks later, A.G. was told to move her belongings into the laundry room, which was to be her new bedroom. [Petitioner] came up behind A.G. when no one else was home, rubbed his penis against her buttocks and vagina, then inserted his penis inside her vagina for a couple seconds. [Petitioner] again told A.G. to shower.

. . . At trial, A.G. testified that she did not say anything to [Petitioner] during these episodes because she was too scared. However, a couple of days after the final incident A.G. called her mother and asked if she could live with her. A.G. then moved out of [Petitioner]'s home before Christmas. According to A.G., she told no one about her father's conduct because she was scared. Two years later, near the end of 2014, A.G. told her seventh-grade social studies teacher about her father's actions in 2012. At that time, A.G.'s mother and family took her to the child protection center to be examined.

. . . After the state's direct examination of A.G., one of [Petitioner]'s two trial counsel engaged in the following, abbreviated cross-examination:

> Q: GOOD MORNING, MAY I CALL YOU [A.G.]?
>
> A. YES.
>
> Q: THANK YOU. I JUST HAVE A COUPLE QUESTIONS FOR YA. AT THE EGYPT PIKE HOUSE, IF YOU WERE IN THE KITCHEN, WAS THAT SURROUNDED BY OTHER ROOMS?
>
> A: NO.
>
> Q: WERE THERE ANY OTHER ROOMS THAT YOU COULD SEE INTO THE KITCHEN FROM?
>
> A: NO.
>
> Q: OKAY. AND, UM, YOU HAD SAID WHEN MR. MARKS ASKED YOU, THAT YOU MOVED INTO THE LAUNDRY ROOM AS YOUR BEDROOM; DID YOU CHOOSE TO MOVE INTO THE LAUNDRY ROOM?

A: NO, NOT REALLY.

Q: YOU WOULD HAVE RATHER STAYED IN THE BEDROOM WITH [TINA'S DAUGHTER]?

A: YEAH.

Q: OKAY. UM, DURING THE TIME THAT THE TWO YEARS FROM TWO THOUSAND TWELVE TO TWO THOUSAND FOURTEEN, HAD YOU EVER GOT—DID YOU GO TO THE DOCTOR AT ALL? NOT RELATED TO THIS, BUT FOR ANY SORT OF—YOU KNOW, IF YOU GOT THE FLU, OR—

A: UM, NO, NOT THAT I CAN REMEMBER.

. . . With the exception of asking the court for a minute to reflect, this exchange is the victim's entire cross-examination. The state opted not to conduct any redirect examination.

. . . The state's other witness, Dr. Jetty, testified that he worked at the child protection center and evaluated sexually abused children. The parties stipulated that Dr. Jetty is an expert witness in the field of pediatric medicine. Dr. Jetty testified that in November 2014, he conducted a physical examination of A.G. and observed that she exhibited a healing scar inside her vagina. Dr. Jetty opined that the scar did not represent a recent injury, and that it could have occurred months or even a year or two before her examination. Dr. Jetty further opined that A.G.'s vaginal scar had been caused by blunt object penetration, and could have been a penis.

. . . On cross-examination by one of [Petitioner]'s trial counsel, Dr. Jetty described his normal protocol with a patient and conceded that he could not give an opinion concerning the age of A.G.'s injury with any type of certainty. Dr. Jetty thus agreed with counsel that A.G.'s injury could have occurred any time beyond one or two weeks before the examination. During the cross-examination the following exchange occurred:

Q: OKAY. UM, NOW THAT SCAR, IS THERE, IN YOUR MEDICAL TRAINED OPINION, IN ANY WAY THAT THAT COULD HAVE BEEN INFLICTED UPON THE CHILD WITHOUT ANY SEXUAL CONDUCT?

A: UM, NO, SIR.

Q: COULD A TYPE—ANY TYPE OF TRAUMATIC ACCIDENT GIVE THAT TYPE OF INJURY?

> A: IT HAS TO BE—IT HAS TO BE—LIKE A CHILD HAS TO
> FALL ON A SHARP OBJECT WHERE IT HAS TO PENETRATE
> INTO THE VAGINA.

The state also opted not to conduct any redirect examination of Dr. Jetty. After the state rested its case, and after the trial court overruled [Petitioner]'s Crim.R. 29 motion for judgment of acquittal, the defense rested without introducing any evidence.

. . . In its closing argument, the state summarized the evidence and requested that the jury return a verdict of guilty on all charges. When given the opportunity to present closing argument on [Petitioner]'s behalf, one of [Petitioner]'s attorneys made the following argument:

> LADIES AND GENTLEMEN OF THE JURY, AS WE ASKED
> YOU AT THE OUTSET OF THIS TRIAL, WE'RE ASKING YOU
> TO REVIEW THE EVIDENCE AND IF YOU FIND THAT THE
> STATE DID NOT PROVE EACH AND EVERY ELEMENT OF
> THE OFFENSES THAT DEREK'S CHARGED WITH, WE ASK
> THAT YOU COME BACK WITH A NOT GUILTY VERDICT.
> THANK YOU.

The state did not present any rebuttal closing argument.

. . . After receiving the court's instructions and considering the evidence adduced at trial, the jury found [Petitioner] guilty of all charges. The trial court (1) sentenced [Petitioner] to serve an aggregate prison sentence of 35 years to life, and (2) classified [Petitioner] as a Tier III sex offender.

. . . In his sole assignment of error, [Petitioner] asserts that he received ineffective assistance of trial counsel as guaranteed by both the United States Constitution and the Ohio Constitution.

*State v. Guysinger*, No. 15CA3514, 2017 WL 1181076, at **1–3 (Ct. App. Ohio March 28, 2017).

On March 28, 2017, the state appellate court overruled Petitioner's assignment of error, in a *per curiam* opinion in which two of the three judges on the panel concurred. *Id*. The third judge dissented but authored no dissenting opinion. *Id*. Petitioner sought an appeal in the Ohio Supreme Court, but that court declined to exercise jurisdiction over the matter on December 6, 2017. *State*

*v. Guysinger*, 151 Ohio St.3d 1454 (2017). On March 4, 2019, Petitioner filed the instant petition, alleging that he received ineffective assistance of trial counsel. (Doc. 1.)

## II. Standard of Review

Because Petitioner seeks habeas relief under 28 U.S.C. § 2254, the Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this case. The United States Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (quoting *Harrington v. Richter,* 562 U.S. 86, 102 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state–court rulings, and demands that state–court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The United States Court of Appeals for the Sixth Circuit has explained the meaning of the standards found in § 2254(d)(1) as follows:

Under the "contrary to" clause, a federal habeas court may grant the writ "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies the law or bases its decision on an unreasonable determination of the facts, in light of the record before the state court. *Harrington v. Richter*, 562 U.S. 86, 100, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); *Williams*, 529 U.S. at 412–13, 120 S.Ct. 1495.

*Lang v. Bobby,* 889 F.3d 803, 810 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 798, (2019).

Under § 2254(d)(2), a state court's factual determination is not "unreasonable" merely because the federal habeas court would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Instead, a state court's factual findings are "only unreasonable where they are 'rebutted by clear and convincing evidence' and do not have support in the record." *Moritz v. Woods*, No. 16-1504, 2017 WL 2241814, at *5 (6th Cir. May 22, 2017) (*quoting Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted). Moreover, "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (quoting *Miller–El v. Cockrell,* 537 U.S. 322, 340 (2003) ("*Miller–El I*").

The burden of satisfying AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III.    Law and Analysis

### A.    Petitioner's *Cronic* Claim

Petitioner alleges that that state appellate court applied the wrong governing law when analyzing his ineffective assistance of trial counsel claims.  Specifically, Petitioner asserts that the state appellate court wrongly concluded that his claims are governed by the United States Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984) instead of *United States v. Cronic*, 466 U.S. 648 (1984).  Respondent contends that this claim is without merit.

"In all criminal prosecutions," the Sixth Amendment affords "the accused . . . the right . . . to Assistance of Counsel for his defence."  U.S. Const. amend. VI.  "Only a right to 'effective assistance of counsel' serves the guarantee."  *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted).  In *Strickland*, the Supreme Court announced a two-part test for evaluating attorney performance— a petitioner claiming ineffective assistance of counsel to demonstrate that his counsel's performance was: 1) deficient, and that, 2) the petitioner suffered prejudice as a result.  *Strickland*, 466 U.S. at 687; *Hale v. Davis*, 512 Fed. App'x 516, 520 (6th Cir. 2013).  The Supreme Court has explained that without proof of both deficient performance and prejudice, it cannot be said that a sentence or conviction "resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable."  *Strickland*, 466 U.S. 687.

In *Cronic,* however, the Supreme Court acknowledged that certain egregious circumstances amounting to a constructive lack of counsel are "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified," and thus, prejudice can be presumed.  466 U.S. at 658.  The Supreme Court further identified three scenarios where such a presumption is warranted: first, when a defendant has been denied the presence of counsel during a critical stage of the proceedings, such as an arraignment; second, where "counsel entirely fails

8

to subject the prosecutor's case to meaningful adversarial testing;" and third, where counsel is called upon to render assistance under circumstances where even competent counsel very likely could not provide effective assistance. *Id.* 659–660; *see also Bell*, 535 U.S. 695–96.

Petitioner asserts that his counsel's performance fits within the second scenario—counsel entirely failed to subject the prosecutor's case to meaningful adversarial testing—because his counsel failed to thoroughly cross-examine the victim, present a case on his behalf, or provide a meaningful closing argument. The state appellate court considered and rejected that assertion:

> In the case sub judice, we do not believe that [Petitioner] has established that his trial counsel completely failed to test the prosecution's case. Thus, the narrow *Cronic* exception to the general ineffective-assistance test set forth in *Strickland*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, is inapplicable. In the case at bar, [Petitioner]'s trial counsel (1) engaged in discovery, (2) requested and received a continuance to allow for an investigator to interview potential witnesses, (3) filed a suppression motion that resulted in the exclusion of one of the state's potential witnesses, (4) were present and participated at trial, (5) cross-examined the state's witnesses, and (6) provided an opening statement and a closing argument. Consequently, the case at bar is not the extremely rare situation in which a defendant's trial counsel completely failed to test the prosecution's case. *See State v. Campbell*, 8th Dist. Cuyahoga Nos. 100246 and 100247, 2014–Ohio–2181, fn. 12 (similarly rejecting a defendant's claim that the court should apply *Cronic* and presume prejudice).

*Guysinger*, 2017 WL 1181076, at *4.

Petitioner contends that the state appellate court's analysis is flawed, however, because "[c]ontrary to the [state appellate court]'s holding . . . *Cronic* does not stand for the proposition that prejudice must be presumed only where 'counsel completely fails to test the prosecution's case.'" (*Petition*, Doc. 1, at PAGE ID # 17 (quoting *Guysinger*, 2017 WL 1181076, at *4).) The plain language of *Cronic*, however, contradicts Petitioner's position. *Cronic* explicitly indicates that only an *entire* failure to subject a case to adversarial testing can justify a presumption of prejudice. 466 U.S. at 659 (explaining that "if counsel *entirely* fails to subject the prosecution's

9

case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable") (emphasis added).

Moreover, in *Bell*, the Supreme Court subsequently reaffirmed that prejudice will be presumed in the second *Cronic* scenario only when counsel completely fails to engage in the entire adversarial process. *Bell*, 535 U.S. at 696–97. In that case, the petitioner was sentenced to death at a hearing at which his counsel failed to introduce any evidence of mitigation or make a closing argument. The Supreme Court nevertheless concluded that the petitioner was not entitled to a presumption of prejudice because his "counsel [did not fail] to oppose the prosecution throughout the sentencing proceeding as a whole, but . . . failed to do so at specific points . . ." and that a presumption arises under *Cronic* only "'if counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing.'" *Id*. at 697 (quoting *Cronic*, 466 U.S. at 659) (emphasis in original). The Supreme Court further explained that "[w]hen we spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be *complete*." *Id*. (emphasis added). *See also Florida v. Nixon*, 543 U.S. 175, 189 (2004) (noting that the *Cronic* presumption of prejudice is "reserved for situations in which counsel has entirely failed to function as the client's advocate"); *Moss v. Hofbauer*, 286 F. 3d 851, 861 (6th Cir. 2002) (noting that the Sixth Circuit has "applied *Cronic* only when where the constructive denial of counsel is imminently clear"); *Benge v. Johnson*, 474 F.3d 236, 247 (6th Cir. 2007) (explaining that the *Cronic* presumption "applies only where defense counsel completely or entirely fails to oppose the prosecution throughout the guilt or penalty phase as a whole.")

In this case, the state appellate court concluded that Petitioner's ineffective assistance claims did not fit within the second *Cronic* scenario because counsel actively represented

Petitioner throughout the proceedings. The state appellate court noted that trial counsel engaged in discovery and pre-trial motion practice and was present at and participated in trial. Although Petitioner complains that counsel should not be "credited" for doing things that "competent counsel does in every case," Petitioner does not complain that the state appellate court credited counsel for performing legal tasks that counsel did not actually perform.

In addition, Petitioner complains that counsel's cross-examinations of the state's two witnesses and counsel's closing were of such low quality that counsel's representation ceased to be "meaningful." Again though, he does not allege that counsel failed to participate entirely in the all of the proceedings. Because Petitioner does not allege a complete failure to advocate but instead complains about the quality of certain pieces of advocacy at specific points, this case does not present a situation where "the constructive denial of counsel and the associated collapse of the adversary system is imminently clear." *Moss*, 286 F.3d at 861 (declining to find that counsel's failure to cross-examine key state witnesses was prejudicial per se); *Bell*, 535 U.S. at 698–99 (explaining that "the waiver of closing argument" at sentencing was "of the same ilk as other attorney errors" governed by *Strickland* instead of *Cronic*). Thus, this case is readily distinguishable from cases where courts found that a presumption of prejudice was warranted under the second *Cronic* scenario. *See Ivory v. Jackson*, 509 F.3d 284, 295 (6th Cir. 2007) (finding no presumption of prejudice under *Cronic* despite counsel's drug addiction issues because counsel participated in proceedings and explaining that cases where a presumption was warranted include a case where defense counsel slept through critical proceedings; a case where counsel expressed contempt and antagonism for the defendant in the jury's presence; and a case where counsel affirmatively refused to present any defense whatsoever at trial due to an unsound strategy).

For these reasons, it was reasonable for the state appellate court to conclude that *Cronic* does not govern Petitioner's claim. Accordingly, the state appellate court's decision was not contrary to Supreme Court precedent, an unreasonable application of federal law, or an unreasonable determination of facts. Habeas relief is not warranted on Petitioner's claim that his ineffective assistance claims are governed by *Cronic*.

B.     **Petitioner's *Strickland* Claims**

Petitioner alternatively asserts that he was denied the effective assistance of counsel under *Strickland*. Respondent answers that this claim is without merit.

As previously explained, to demonstrate ineffective assistance under *Strickland*, a petitioner must establish both deficient performance and prejudice. Establishing *Strickland*'s first prong—deficient performance—"requires a showing that 'that counsel's representation fell below an objective standard of reasonableness.'" *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011) (quoting *Strickland*, 466 U.S. at 688). To make such a showing, a petitioner "must overcome the 'strong [ ] presum[ption]' that his counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Hale*, 512 F. App'x at 520 (quoting *Strickland*, 466 U.S. at 687). "To avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689). In cases like this one, involving trial performance, a petitioner must establish prejudice by showing that there is a reasonable probability that, but for his counsel's errors, the result of his trial would have been different. *Strickland*, 466 U.S. at 687. A reasonable probability is one sufficient to undermine the confidence in the outcome of trial. *Id.* at 694.

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Harrington*, 562 U.S. at 105. The Court observed that while "'[s]urmounting *Strickland*'s high bar is never . . . easy.' . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is even more difficult." *Id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) and citing *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052). The Court instructed that the standards created under *Strickland* and § 2254(d) are both " 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* (citations omitted). Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

1.      Counsel's Cross-Examinations of the State's Two Witnesses

Petitioner alleges that he was denied the effective assistance of counsel under *Strickland* because his attorney did not thoroughly cross-examine the state's two witnesses. The state appellate court rejected that claim, finding that counsel's cross-examinations of the victim and the state's expert were neither deficient nor prejudicial.

> Because [Petitioner] did not establish under *Cronic* that prejudice should be presumed, we must now review his ineffective-assistance claim under the *Strickland* standard . . . .
>
> We first consider [Petitioner]'s claim that even if prejudice is not presumed, his trial counsels' limited cross-examination of the victim (his 13–year–old daughter A.G.), and counsels' ineffective cross-examination of the state's expert witness constituted deficient performance that prejudiced him. Generally, "[t]he extent and scope of cross-examination clearly fall within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel." *State v. Leonard*, 104 Ohio St.3d 54, 2004–Ohio–6235, 818 N.E.2d 229, ¶ 146. Moreover,

" '[a]n appellate court reviewing an ineffective assistance of counsel claim must not scrutinize trial counsel's strategic decision to engage, or not engage, in a particular line of questioning on cross-examination.' " *State v. Dorsey*, 10th Dist. Franklin No. 04AP–737, 2005–Ohio–2334, ¶ 22, quoting *In re Brooks*, 10th Dist. Franklin No. 04AP164, 2004–Ohio–3887, ¶ 40; *see also State v. Allah*, 4th Dist. Gallia No. 14CA12, 2015–Ohio–5060, ¶ 23.

. . . In the case at bar, we recognize that only one prosecution witness (A.G.) claimed to have personal knowledge of the criminal offenses. Also, no contemporaneous physical evidence exists to support A.G.'s testimony. Our review of the record reveals that on cross-examination, [Petitioner]'s trial counsel asked five tangential, substantive questions: (1) two questions asked whether other rooms had a view of the kitchen, (2) two questions asked whether A.G. wanted to move her bedroom to the laundry room, and (3) the final substantive question asked whether A.G. had gone to the doctor for unrelated medical conditions. Counsel, however, did not meaningfully or forcefully challenge A.G.'s recollection of the details of the crimes, did not raise issues concerning any possible motivation she may have had to fabricate her testimony, and did not contest her reason for delaying her reporting of the crimes for approximately two years.

. . . After our review, however, we do not believe that the record supports the argument that the cross-examination of A.G. falls outside the realm of trial strategy, or that the cross-examination prejudiced [Petitioner]. In light of the very sensitive nature of this case, which involves a child victim of sexual assault, counsels' decision not to extensively cross-examine A.G. does not, by itself, constitute ineffective assistance of trial counsel. *See, e.g., State v. Hughes*, 10th Dist. Franklin No. 14AP–360, 2015–Ohio–151, ¶ 60 (trial counsel's failure to cross-examine any of the state's witnesses, including the child victim, in a case involving rape and gross sexual imposition, did not constitute ineffective assistance, reasoning that "[t]rial counsel's decision not to cross-examine N.P. and F.H., both minors, is a reasonable and understandable trial tactic given the sensitive nature of this case"); *State v. Diaz*, 9th Dist. Lorain No. 04CA008573, 2005–Ohio–3108, ¶ 20–23 (trial counsel's decision not to cross-examine child victims in case involving rape and gross sexual imposition was within the realm of sound trial strategy and did not constitute ineffective assistance of counsel). Various reasons exist to support the tactical decision to conduct a very brief cross-examination of the child-victim. Trial counsel could have been wary about a contentious cross-examination of A.G., who had testified emotionally on direct examination. A more rigorous cross-examination could evoke more emotion and greater sympathy by the jury. Also, trial counsels' limited cross-examination of A.G. did elicit a possible reason for A.G. to be angry at [Petitioner]—she was forced, against her wishes, to move her bedroom into the laundry room. Moreover, it is not at all clear that additional questioning of A.G. would have necessarily resulted in favorable testimony concerning the details of the offenses and her reason for not reporting the crimes earlier than she did. A.G. testified on direct examination that she did not report the crimes because she was scared. Additional cross-examination on these matters may

have simply bolstered the state's case. *See State v. Freeman*, 8th Dist. Cuyahoga No. 92809, 2010–Ohio–3714, ¶ 51 (decision not to cross-examine child victims of rape and gross sexual imposition about why they failed to come forward with their allegations sooner did not constitute ineffective assistance when they explained this on direct examination because "[i]t would have been foolish for defense counsel to re-elicit this damning testimony and explanations from the children on cross-examination").

. . . We also point out that [Petitioner]'s trial counsel did extensively cross-examine Dr. Jetty, the state's expert witness. This cross-examination elicited favorable testimony that Dr. Jetty could not, with any certainty, identify an age or the source of A.G.'s vaginal scar, thus intimating that the scar could have resulted from some conduct that occurred when she lived with her mother. The cross-examination also elicited unfavorable testimony that, in Dr. Jetty's opinion, the scar could not have been inflicted without any sexual conduct, but this statement was tempered by Dr. Jetty's response to the follow-up question that the scar could have been caused by a traumatic accident, and the fact that it might have occurred at any time beyond two weeks prior to the examination, i.e. it happened not while she lived with her father, but while she lived with her mother. Once again, counsels' decision to engage in this line of questioning falls within the permissible scope of trial strategy. *See Allah*, 4th Dist. Gallia No. 14CA12, 2015–Ohio–5060, at ¶ 23.

. . . [Petitioner] asserts, without record support, that a more thorough cross-examination of the child victim and the doctor could have possibly elicited favorable testimony to challenge the victim's timeline, the details of the crimes, to disclose a potential motive on the part of the victim or her mother for claiming that [Petitioner] sexually abused her, and emphasized that the victim's two-year delay in reporting the crimes. We readily acknowledge trial counsel should ask questions to discern potential inconsistencies or inaccuracies with a witness' memory or perception. As we noted previously, however, trial counsel could have justifiably determined that additional cross-examination of the child victim on these matters might have alienated the jury and actually bolstered the state's case. Also, by engaging in a more limited cross-examination of the child victim, [Petitioner]'s trial counsel were able to prevent the state from engaging in a redirect examination. Counsels' investigation could have revealed the risk that pursuit of these areas could produce more damaging evidence than the state had introduced. In short, it appears that [Petitioner]'s ineffective assistance claim is premised on speculation, which is insufficient to establish his claim. *Short*, 129 Ohio St.3d 360, 2011–Ohio–3641, 952 N.E.2d 1121, at ¶ 119 (mere speculation cannot support either the deficient-performance or prejudice requirements of an ineffective-assistance claim); *State v. Williams*, 4th Dist. Jackson No. 15CA3, 2016–Ohio–733, ¶ 37 (defendant cannot base claim of ineffective assistance of counsel on speculation that evidence outside the record would establish prejudice).

. . . Therefore, after our review of the record, we believe that [Petitioner] did not establish that his trial counsel provided ineffective assistance by failing to cross-

examine the state's witnesses more extensively. Thus, [Petitioner] failed to satisfy either prong of the *Strickland* test.

*Guysinger*, 2017 WL 1181076, at *5–6.

The state appellate court reasonably concluded that Petitioner could not satisfy *Strickland*'s deficiency prong with regard to his cross-examination claims. The state appellate court concluded that counsel's decision to limit cross-examination of a child victim of sex abuse could have been a sound trial strategy given that a more involved cross might have alienated the jury or provoked sympathy for the victim in light of her age and the nature of the case. This was not an unreasonable conclusion, particularly because the state appellate court had to presume that the limited cross was a sound trial strategy. *See e.g.*, *Strickland*, 466 U.S. at 689 ("[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy") (quotation omitted).

Petitioner speculates that counsel could have asked the victim questions that may have revealed that she "was making up the story" about being sexually abused by her father, disclosed her motives for fabricating those claims, and shown that she lacked an adequate explanation for waiting to report her abuse. Nevertheless, the cross-examination of witnesses falls within the area of tactics or strategy that courts typically do not attempt to second guess. "The cross-examination of a witness is a delicate task; what works for one lawyer may not be successful for another. Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Henderson v. Norris*, 118 F.3d 1283, 1287 (8th Cir. 1997). Further, "[i]mpeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Dell v. Straub*, 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002). Accordingly, the state appellate court reasonably determined that counsel's limited cross-examination of the child victim

did not constitute deficient performance under *Strickland*. *See Jackson v. Bradshaw*, 681 F.3d 753, 765 (6th Cir. 2012) (counsel did not perform deficiently by failing to press witness on her possible bias particularly when the effect of further probing was speculative).

The state appellate court also reasonably concluded that counsel's cross-examination of the state's expert witness was not deficient under *Strickland*. The state appellate court noted that counsel's cross-examination of the state's expert was extensive. The trial transcript reasonably supports that conclusion— counsel's questions prompted the expert to testify about how he conducts medical examinations, his findings after examining the victim in this case, and how he arrived at his findings. (*Trial Transcript*, Doc. 8, at PAGE ID ## 252–57.) The state appellate court also noted that counsel's cross-examination of the state's expert produced helpful testimony. The trial transcript reasonably supports that conclusion as well— counsel's questions prompted the expert to testify that it was possible that the victim's vaginal scar was caused by a traumatic accident, and that there was no way that the expert could determine what caused her injury, only that it was possibly caused by the type of sexual abuse that she had described. (*Id*., at PAGE ID # 254–55, 256–58.) Moreover, counsel's questions prompted the state's expert to testify that he could not determine precisely when the injury that resulted in the scar occurred, only that the injury had to have occurred more than two weeks before he physically examined the victim. (*Id*., at PAGE ID # 256–57.) Given that the state appellate court had to presume that counsel's cross was a sound trial strategy, and that cross-examination falls within the area of tactics or strategy that courts typically do not attempt to second guess, it was reasonable for the state appellate court to conclude that counsel's cross-examination of the state's expert did not constitute deficient performance under *Strickland*.

The state appellate court also reasonably concluded that Petitioner could not satisfy *Strickland*'s prejudice prong with regard to his cross-examination claims. Although Petitioner alleges that a more thorough examination of the state's two witnesses may have elicited favorable testimony, the state court noted that this allegation was purely speculative. The state appellate court further noted that counsel may have elected to forgo further questioning because counsel's investigation revealed that additional questioning might produce damaging evidence or because counsel may have wished to prevent the prosecution from engaging in redirect. These conclusions are entitled to AEDPA deference— Petitioner cannot obtain habeas relief unless he can show that the state appellant court's determination was "so lacking in justification that there was an error well understood and comprehended in existing law beyond the possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. Petitioner does not address that standard. Indeed, he does not address the state appellate court's decision at all. Nevertheless, when § 2254(d) applies, a federal habeas court must analyze if there is any reasonable argument that counsel satisfied *Strickland's* deferential standard. *Harrington*, 562 U.S. at 105. Because the state appellate court's prejudice determination was reasonable, and Petitioner does not demonstrate that it is not, the Magistrate Judge concludes that Petitioner has not shown that the state appellate court erred when concluding that Petitioner did not satisfy *Strickland*'s prejudice prong.

In sum, the state appellate court concluded that Petitioner could not demonstrate that counsel's cross examinations of the state's two witnesses were deficient or prejudicial. Those determinations were not contrary to Supreme Court precedent, an unreasonable application of federal law, or an unreasonable determination of facts. Habeas relief is not warranted for these ineffective assistance claims under *Strickland*.

Petitioner also maintains that he was denied the effective assistance of counsel under *Strickland* because his attorney failed to make an adequate closing argument.  The state appellate court found that trial counsel's closing argument was not prejudicial under *Strickland*.

> Appellant next argues that trial counsel's very brief closing argument, in which one attorney simply requested that the jury review the evidence and return a not-guilty verdict if it found that the state had not proven each element of the charged offenses, constitutes ineffective assistance of counsel.

> . . . During closing argument, counsel simply requested that the jury review the evidence and, *if* it found that the state had not proven each and every element of the charged offenses, return a not-guilty verdict.  Generally, "[c]ounsel's decision on whether to give an opening statement or closing argument and how to formulate and deliver them are tactical decisions."  *See State v. Fouts,* 4th Dist. Washington No. 15CA25, 2016–Ohio–1104, ¶69, citing *State v. Bradley*, 42 Ohio St.3d 136, 144, 538 N.E.2d 373 (1989) (rejecting defendant's ineffective assistance of counsel claim that his counsel's closing argument was "too brief, passionless and themless").  Normally "[t]he substance of closing argument falls within the realm of trial strategy." *State v. Cameron*, 10th Dist. Franklin No. 09AP–56, 2009–Ohio–6479. ¶31.  Here, we agree with appellant that the closing argument presented in the case sub judice is questionable.   Even though appellant faced severe consequences, counsel's closing argument did not attempt to challenge the evidence in any manner, did not point to potential inconsistencies or potential conflicts and did not argue the lack of corroborative evidence.  Nevertheless, numerous case authorities hold that even if defense counsel opts to waive closing argument entirely, that decision will not automatically constitute a finding of ineffective assistance.  For example, in *State v. Burke*, 73 Ohio St.3d 399, 653 N.E.2d 242 (1995), the Ohio Supreme Court concluded that in some circumstances, the waiver of closing argument could be viewed as a matter of trial strategy.  In *Burke*, the prosecution made a brief, cursory closing argument. The court concluded that counsel's waiver of closing argument was not improper in that particular situation because (1) the prosecution's closing argument was very brief and counsel may have opted not to highlight various aspects of the evidence; and (2) the waiver precluded the prosecution from making a rebuttal argument.

> . . . Here, we do not believe that the record supports the view that a more detailed closing argument would have resulted in a different outcome.  Our review of all of the evidence adduced at trial will not permit us to arrive at the conclusion that a different, more detailed or lengthy closing argument would have somehow changed the jury's view of the matter and changed the result of the trial.

. . . At first glance, although we recognize that trial counsel may not have performed
as one would have expected in a criminal case, the record does not support the view
that a more detailed closing argument would have resulted in a different outcome
at trial. Admittedly, appellant raises issues and areas of concern. However, we
may only speculate about why counsel performed in this particular manner and
whether any prejudice may have actually resulted. In view of the presumption that
we must apply concerning sound trial strategy, we are left to only speculate whether
prejudice resulted. In other words, we cannot state that a reasonable probability
exists that but for counsels' performance, the result would have been different.
Here, the evidence adduced at trial clearly supports the jury's verdict. Additionally,
we point out that if any pertinent and relevant evidence favorable to the appellant
exists and is available outside this record, appellant may choose to pursue a post-
conviction relief remedy.

*Guysinger*, 2017 WL 1181076, at *6–7.

The state appellate court's conclusion was not unreasonable. Assuming counsel's failure

to submit a more detailed closing argument constituted deficient performance,[1] it was reasonable

---

[1] Although the state appellate court indicated that counsel's brief closing was "questionable," it is
not entirely clear if the state appellate court concluded that it constituted deficient performance.
The Magistrate Judge notes that trial transcripts confirm that the closing was summary, but even a
complete waiver of closing argument might constitute sound trial strategy.

> Closing arguments should 'sharpen and clarify the issues for resolution by the trier
> of fact' . . . but which issues to sharpen and how best to clarify them are questions
> with many reasonable answers. Indeed, it might sometimes make sense to
> forgo closing argument altogether . . . Judicial review of a defense attorney's
> summation is therefore highly deferential-and doubly deferential when it is
> conducted through the lens of federal habeas.

*Yarborough v. Gentry*, 540 U.S. 1, 6, (2003) (citing *Bell*, 535 U.S. at 701-702) (internal citations
omitted). In any event, because the state appellate court clearly concluded that the closing was not
prejudicial, and that conclusion is reasonable, this Court need not reach the deficiency prong.
*Strickland*, 466 U.S. at 697 (explaining that "there is no reason for a court deciding an ineffective
assistance claim . . . to address both components of the inquiry if the defendant makes an
insufficient showing on one").

for the state appellate court to conclude that Petitioner did not demonstrate that but for a more detailed closing, there was a reasonable probability of a different outcome. The state appellate court noted that the evidence presented at trial was sufficient to support the jury's verdict. The trial transcripts reasonably support that conclusion. Accordingly, it was reasonable for the state appellate court to conclude that Petitioner's speculations about what a more detailed closing may have accomplished did not undermine confidence in the trial's outcome. *Strickland*, 466 U.S. at 694 (a reasonable probability of a different outcome is one that is sufficient to undermine confidence in the outcome); *Trujillo v. Plough*, 475 F. App'x. 261, 270–71 (10th Cir. 2012) (finding that even if counsel's waiver of closing argument constituted deficient performance, petitioner could not show prejudice given sufficient evidence of guilt presented at trial).

In sum, the state appellate court concluded that Petitioner could not demonstrate that trial counsel's closing was prejudicial. Because that determination was not contrary to Supreme Court precedent, an unreasonable application of federal law, or an unreasonable determination of facts, Petitioner is not entitled to habeas relief for this claim.

C.       Petitioner's Motion

Petitioner also moves the Court for leave to depose his trial counsel and to discover trial counsel's legal file. (Doc. 12.) Respondent opposes Petitioner's motion.

The rules governing discovery do not automatically apply to habeas actions. *See Harris v. Nelson*, 394 U.S. 286, 295 (1969). Instead, Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts ("Rule 6") provides that, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure[.]" Pursuant to that "good cause" standard, a district court should grant leave to conduct discovery in habeas actions only " 'where specific allegations before the court show reason to believe that the petitioner

may, if the facts are more fully developed, be able to demonstrate that he is . . . entitled to relief . . . .'" *Bracy v. Granley*, 520 U.S. 899, 908–09 (1997) (quoting *Harris*, 394 U.S. at 300); *see also Williams v. Bagley*, 380 F.3d 932, 974–75 (6th Cir. 2004); *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001). Thus, a petitioner cannot use the discovery process as "fishing expedition" and must at least attempt to identify what he expects to uncover through his discovery requests. *See Williams v. Bagley*, 380 F.3d at 976; Rule 6 (providing that "[a] party requesting discovery must provide reasons for the request").

When determining whether to grant a petitioner leave to conduct discovery, an increasing number of courts in the Sixth Circuit hold that they must also consider the impact of the Supreme Court's decision in *Pinholster*. *See e.g.*, *Johnson v. Bobby*, No. 2:08-cv-55, 2018 WL 1382455, at *7 (S.D. Ohio March 19, 2018) (analyzing *Pinholster's* impact on discovery in habeas cases); *Group v. Robinson*, 132 F.Supp.3d 954, 959 (N.D. Ohio 2018) ("This court does not apply habeas Rule 6 in isolation" but must also consider *Pinholster*); *Davis v. Bobby*, No.210–cv–107, 2017 WL 2544083, at * 3 (S.D. Ohio June 13, 2017) (analyzing cases that have discussed the impact of *Pinholster* on discovery in habeas cases). These courts note that in *Pinholster*, the Supreme Court held that a federal court's review under § 2254(d) of a claim adjudicated on the merits by a state court is limited to the factual record that was before the state court. These courts also acknowledge that although *Pinholster* did not explicitly address discovery under Rule 6, the Sixth Circuit has consistently disregarded evidence gathered during federal habeas proceedings. *Johnson*, 2018 WL 1382455, at * 7 (*citing Loza v. Mitchell*, 766 F.3d 494 (6th Cir. 2014)). They further reason that it makes little sense to allow petitioners to discover information that courts cannot consider. *See e.g.*, *Davis*, 2017 WL 2544083, at * 3 ("*Pinholster's* holding necessarily informs any determination as to whether discovery is warranted . . . . Put simply, unusable evidence cannot

lead to relief"); *Graggs v. Warden, Lebanon Correctional Inst.*, No. 2:12-cv-190, 2013 WL 2404076, at *18 (S.D. Ohio May 30, 2013) (citing *Caudill v. Conover*, 871 F. Supp. 2d 639, 646 (E.D. Ky. May 14, 2012)) ("It would defy logic to preclude a petitioner from developing factual information in an evidentiary hearing [under *Pinholst*er], but allow her to introduce the same factual information via discovery and expansion of the record").

Nevertheless, there are circumstances where a federal habeas court can review new evidence without running afoul of *Pinholster*.

> Such circumstances include if the Court determines from the existing record that the state courts' decision was unreasonable under § 2254(d); if a claim was not adjudicated on the merits but is otherwise properly before the Court for habeas review; or if the Court is considering whether to excuse a procedural default.

*Johnson,* 2018 WL 1382455 at *8. This is not one of those circumstances. In this case, the state appellate court determined Petitioner's ineffective assistance claim on the merits and that determination was reasonable under § 2254(d). In addition, Petitioner does not seek to overcome a procedural default. Instead, he seeks discovery in order to determine counsel's motivations for failing to cross-examine the state's witnesses or submit a more detailed closing argument. That information would be barred from consideration, however, pursuant to *Pinholster*. Therefore, the requested discovery would be futile.

For these reasons, Petitioner's motion seeking leave to conduct discovery is **DENIED**.

## IV.    Recommended Disposition

For the foregoing reasons, the Magistrate Judge **RECOMMENDS** that the petition be **DENIED** and that this action be **DISMISSED**. The motion for discovery is **DENIED**.

### Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific

proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the District Judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED**.

Date: November 25, 2019                    /s/ Kimberly A. Jolson
                                           KIMBERLY A. JOLSON
                                           UNITED STATES MAGISTRATE JUDGE